Gerry Fagan, Esq.
Moulton Bellingham, P.C.
Suite 1900, Crowne Plaza
27 North 27th Street
P.O. Box 2559
Billings, Montana 59103-2559
(406) 248-7731

*Attorneys for Plaintiff*

\* \* \* \* \* \* \*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
### BILLINGS DIVISION

\* \* \* \* \* \* \*

| | |
|---|---|
| BANCINSURE, INC., | Case No. CV-11-58-BLG-RFC |
| Plaintiff, | |
| vs. | |
| FIRST INTERSTATE BANK,. | |
| Defendant. | |

## COMPLAINT OF BANCINSURE, INC.

Comes now the Plaintiff, BancInsure, Inc. ("BancInsure"), by and through its undersigned attorneys, for its Complaint against Defendant First Interstate Bank (the "Bank") for Declaratory Judgment pursuant to 28 U.S.C. § 2201 pursuant to a certain policy of insurance issued by BancInsure to FIB. In support of its cause of action, BancInsure states as follows:

## I.    PARTIES

1.    BancInsure is a corporation incorporated under the laws of the State of Oklahoma, with its principal place of business in Oklahoma City, Oklahoma. BancInsure is duly qualified and authorized to transact its business within the State of Montana.

2.    Upon information and belief, the Bank is a banking corporation chartered under the laws of the State of Montana and is located in Billings, Yellowstone County, State of Montana. The Bank's principal office is located at 401 North 31st St., Billings, MT 59101. The Bank's registered agent is Carol Stephens Donaldson, 401 North 31st St., PO Box 30918, Billings, MT 59101.

## II.    JURISDICTION AND VENUE

3.    This Court has the power to determine the parties' respective rights and other legal obligations as requested herein pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 & 2202.  The disputes between BancInsure and the Bank, discussed below, create an actual controversy for this Court to adjudicate.

4.    This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

5.    Venue is proper before this Court pursuant to 28 U.S.C. § 1391(a)

because all relevant actions and transactions occurred within this judicial district, and because the Defendant is located within this judicial district.

## III.   FACTUAL ALLEGATIONS

### A.   The Bank Loan for the Villages of Ocean Shores Condominium Project

6.     On July 12, 2007, the Bank agreed to make a $6,205,000.00 development loan to the Villages of Ocean Shores, LLC (the "Ocean Shores Development Loan").  The Ocean Shores Development Loan was for the purpose of development of 540 condominium units and 15 buildings, and additional buildings, to be located in Ocean Shores, Washington.

7.     Paul Pariser ("Pariser") was the President of Villages of Ocean Shores, LLC ("VOS"), and had a banking relationship with the Bank preceding the Ocean Shores Loan.

8.     Pariser executed a commercial guaranty on July 12, 2007, guarantying payment and performance of the Ocean Shores Development Loan.

9.     The Bank made a $3,500,000.00 construction loan to VOS for the Ocean Shores condominium project.  Pariser did not execute any guaranty for this construction loan.

### B.   The Bank takes Pariser's Personal Funds for Partial Payment of the Ocean Shores Development Loan

10.    Pariser maintained a personal account at the Bank, which contained

$2,623,396.40 as of April 15, 2009.

11.    On April 2, 2009, the Bank notified Pariser that it deemed itself insecure on the Ocean Shores Development Loan, and declared the loan in default. As of April 2, 2009, the amount due pursuant to the Ocean Shores Development Loan was $4,769,405.05.

12.    On April 15, 2009, the Bank took the $2,623,396.40 from Pariser's personal account for the purpose of paying itself for amounts due on the Ocean Shores Development Loan.

### C.    The Underlying Litigation

13.    On or about April 2, 2009, the Bank sued Pariser in Montana State District Court, Yellowstone County, Case No. DV 09-0474 (the "Montana Lawsuit"), seeking to collect the Ocean Shores Development Loan from Pariser.

14.    On June 25, 2009, Pariser filed an Answer and Counterclaim in the Montana Lawsuit. Pariser alleged that he was not personally liable to pay the Bank for the Ocean Shores Development Loan. In addition, Pariser's counterclaim alleged that the Bank had wrongfully taken the $2,623,396.40 from Pariser's personal account.

15.    On May 22, 2009, Pariser sued the Bank in the United States District Court, Western District of Washington (the "Washington Lawsuit"), alleging that the Bank had wrongfully taken $2,623,396.40 from his personal bank account.

The Washington Lawsuit was stayed pending resolution of the Montana Lawsuit.

**D.     The Bank Provides Notice and Tender of the Claim to BancInsure 15 Months After Commencement of the Litigation**

16.     On October 18, 2010, the Bank first notified BancInsure of the Montana Lawsuit and Washington Lawsuit, and requested that BancInsure provide coverage for the Montana Lawsuit and Washington Lawsuit.   The e-mail forwarded to BancInsure from the Bank's counsel stated as follows:

> Here is the Pariser Complaint in Washington.  That lawsuit has been stayed [i.e. placed on hold] pending the outcome of the Montana case, which is really the main event.  As a practical matter, we don't believe it will ever be re-started.
>
> More importantly, attached is the Answer and Counterclaim in the Montana case.  This is really the "main event."
>
> Please notify the Bank's liability carrier.
>
> They won't be happy with the late notice, but these cases have been very well defended and there has been no prejudice.

17.     At no time prior to October 28, 2010, had the Bank provided a notice of claim and request for coverage from BancInsure.

**E.     The Jury in the Montana Lawsuit Determines that the Bank Wrongfully Took Pariser's Personal Funds.**

18.     On April 4, 2011, the trial in the Montana Lawsuit commenced.

19.     On April 13, 2011, the jury determined that the Bank had wrongfully set-off, converted, and otherwise illegally taken Pariser's personal funds in the amount of $2,623,396.40, plus interest on that amount, "plus fair compensation for

the time and money properly expended in the pursuit of the property."

**F.    The BancInsure Extended Professional Liability Insurance Policy**

20.    BancInsure issued an Extended Professional Liability Policy No. PLI 0010643 to the Bank, for a policy period commencing October 1, 2008 through October 1, 2009 (the "2008-2009 Policy").  A true and correct copy of the 2008-2009 Policy is attached as Exhibit A.

21.    BancInsure issued an Extended Professional Liability Policy No. PLI 0010643 to the Bank for a policy period commencing October 1, 2009 through October 1, 2010 (the "2009-2010 Policy").

22.    BancInsure issued an Extended Professional Liability Policy No. PLI 0010643 to the Bank for a policy period commencing October 1, 2010 through October 1, 2011 (the "2010-2011 Policy").

23.    The 2008-2009 Policy is a "claims-made" policy, which includes the following provisions:

> COVERAGE UNDER THIS POLICY IS LIMITED TO LIABILITY RESULTING FROM **CLAIMS** FIRST MADE DURING THE **POLICY PERIOD** AND REPORTED AS SOON AS PRACTICABLE, BUT NO LATER THAN 60 DAYS AFTER THE DATE OF TERMINATION OF THE **POLICY PERIOD**, OR **CLAIMS** FIRST MADE AND REPORTED IN ANY **EXTENDED REPORTING PERIOD** PURCHASED. **DEFENSE EXPENSES**, INCURRED IN THE DEFENSE OF A **CLAIM**, ARE A PART OF **LOSS** AND ARE INCLUDED IN EACH AGGREGATE LIMIT OF LIABILTY.   THE INSURER HAS NO DUTY UNDER THIS POLICY TO DEFEND ANY **CLAIM**.

24.    Insuring Agreement D of the 2008-2009 Policy is subject to an aggregate limit of liability of $10,000,000.00, a $250,000.00 per-claim self insured retention, and provides as follows:

> The Insurer will pay on behalf of the **company**, **loss** that is the result of a **claim** for a **lending wrongful act** first made during the **policy period** or during the **extended reporting period**, if exercised.

25.    Section II (Coverage Clause) of the 2008-2009 Policy provides as follows:

> This policy shall cover, subject to all of the other provisions of the policy, loss that results from a **claim** for a **wrongful act** committed after the **retroactive date** on the condition that written notice of the **claim** is given to the Insurer at the address shown in Item 7. of the Declarations. Such notice must be received within the:
>
> 1.    policy period[.]

26.    Section III, B (Definitions) of the 2008-2009 Policy defines a "claim" as follows:

> B.    **Claim** means
>   1.    a written or oral demand for monetary damages or non-monetary relief, including notice of an arbitration, mediation or other dispute resolution proceeding in which money damages are sought;
>   2.    a civil proceeding commenced by the service of a complaint or similar pleading;
>   3.    an administrative or regulatory proceeding commenced by the filing of a notice of charges or similar pleading
>
> A **claim** shall be deemed to have been made on the date the **company** or an **insured person** receives the written or oral demand, or on the date that the

judicial or administrative proceeding is filed in court or with the administrative agency.

All **claims** involving **interrelated wrongful acts** shall be considered a single **claim** and shall be deemed to have been first made when the earliest **claim** was first made.

27.   Section III, F defines "defense expenses" as follows:

F.   **Defense expenses** means reasonable costs, attorneys' fees, charges and expenses incurred by **insured persons** or the **company** in the investigation, defense or appeal of a covered **claim**…

28.   Section III, U of the Policy defines "loss" as follows:

**Loss** means any amount which any **insured person** or the **company** is legally obligated to pay as a result of a **claim**, and includes punitive, exemplary or multiple damages in excess of actual damages (except where uninsurable under applicable law), other damages, judgments, settlements and reasonable **defense expenses**; however, a **loss** shall not include:

1.   civil money penalties or restitution awarded as a result of a financial institution regulatory proceeding.
2.   taxes, fines or penalties;
3.   matters which may be deemed uninsurable under the law pursuant to which this policy shall be construed; or
4.   any principal, interest or other monies paid, accrued or due as the result of any loan, lease or extension or credit.

29.   Section IV, A (Exclusions) of the 2008-2009 Policy excludes

coverage "for **loss** in connection with any **claim** based upon, arising out of, relating

to, in consequence of, or in any way involving" the following:

1.   any **claim** first made prior to the effective date of this policy, shown in Item 2. of the Declarations;

...

3.   any **insured person** or the **company** gaining in fact any profit or advantage to which they were not legally entitled;

...

12.   damage to or destruction of any tangible property including loss of its use;

...

13.   any assumption by the **company** or an **insured person** of any liability or obligation under any contract or agreement, or the failure to perform any contract or agreement, unless such **company** or **insured person** would have been liable even in the absence of such contract or agreement;

30.   Section VII, A of the 2008-2009 Policy provides as follows:

The Insurer shall have no obligation to defend any **claim** but shall pay, on the condition that it has given its written consent, the reasonable **defense expenses** incurred by the **insured person**, or the **company** in the defense of a **claim** that is covered under this policy.

31.   Section IX, A (Notice of Claim) of the 2008-2009 Policy provides as follows:

The **insured persons** and the **company** shall, as a condition precedent to their rights under this policy, give the Insurer notice, in writing, as soon as practicable of any claim and shall give the Insurer such information and cooperation as it may

reasonably require.

32.    The terms, insuring agreement, conditions and exclusions of the 2009-2010 Policy and the 2010-2011 Policy are the same as in the 2008-2009 Policy, with the exception that exclusion 13 contains the following closing phrase: "except when covered by Insuring Agreement D."

## COUNT I – DECLARATORY JUDGMENT

33.    BancInsure hereby incorporates by reference the allegations contained in Paragraphs 1-32 of this Complaint as if set forth fully herein.

34.    The Montana Litigation and Washington Litigation brought by Pariser against the Bank constitute a "claim" as defined in the 2008-2009 Policy, 2009-2010 Policy, and 2010-2011 Policy.

35.    The Montana Litigation and Washington Litigation were filed and served on the Bank prior to the policy period of the 2009-2010 Policy and 2010-2011 Policy.

36.    The 2008-2009 Policy, 2009-2010 Policy and 2010-2011 Policy only provide coverage for claims first made during the policy period, or within 60 days after termination of the policy period.

37.    Because the claim by Pariser was made prior to the policy periods of the 2009-2010 Policy and 2010-2011 Policy, any loss to the Bank resulting from the Montana Lawsuit or Washington Lawsuit is not covered by the 2009-2010

Policy and 2010-2011 Policy.

38.    The 2008-2009 Policy only covers losses resulting from claims first made during the policy period of the 2008-2009 Policy and reported to BancInsure as soon as practicable but no later than 60 days after the date of termination of the policy period.

39.    The Bank first gave notice of the claim to BancInsure and requested coverage on October 18, 2010.

40.    Because the Bank did not first give notice of the claim to BancInsure and request coverage until 15 months after the claim was made, any loss to the Bank that is the result of the Montana Lawsuit and Washington Lawsuit is not covered by the 2008-2009 Policy.

41.    Because the 2008-2009 Policy is a "claims-made" policy, BancInsure is not required to establish that it was prejudiced by the Bank's failure to follow the 2008-2009 Policy's notice of claim provisions.

42.    Alternatively, BancInsure was prejudiced by the Bank's failure to comply with the notice of claim provisions in the 2008-2009 Policy.

43.    The jury in the Montana Lawsuit determined that the Bank wrongfully set-off, converted, and otherwise illegally obtained the funds in Pariser's personal account at the Bank in the amount of $2,623,396.40.

44.    The 2008-2009 Policy does not provide insurance coverage for the court-ordered return of illegally obtained property.

45.    The 2008-2009 Policy does not provide coverage for a loss in connection with any claim "based upon, arising out of, relating to, in consequence of, or in any way involving" the Bank wrongfully, improperly and illegally obtaining the funds in Pariser's personal account.

46.    The Bank's wrongful set-off, conversion and otherwise illegal taking of Pariser's personal funds was an attempt to recover lost principal, interest or other monies due on the Ocean Shores Development Loan, which is not a covered loss under the 2008-2009 Policy.

47.    The losses alleged by the Bank were incurred in connection with a claim "based upon, arising out of, relating to, in consequence of, or in any way involving" loss of use of property, and therefore are not covered by the 2008-2009 Policy.

48.    The losses alleged by the Bank were incurred in connection with a claim "based upon, arising out of, relating to, in consequence of, or in any way involving" the assumption by the Bank of a contract or agreement, or the failure to perform any contract or agreement, and therefore are not covered under the 2008-2009 Policy.

49.     Any losses alleged by the Bank were incurred in connection with a claim "based upon, arising out of, relating to, in consequence of, or in any way involving claims and matters otherwise excluded by Section IV, A of the 2008-2009 Policy.

50.     BancInsure has no obligation to reimburse the Bank for defense expenses incurred in the Montana Lawsuit and Washington Lawsuit, because these were not "covered claims" under the 2008-2009 Policy.

51.     BancInsure is entitled to a declaration from this Court that the 2008-2009 Policy, 2009-2010 Policy, and 2010-2011 Policy do not provide coverage for any of the losses alleged by the Bank, or for the Montana Lawsuit and Washington Lawsuit.

52.     BancInsure is entitled to a declaration from this Court that it has no obligation, under the 2008-2009 Policy, 2009-2010 Policy and 2010-2011 Policy, or otherwise, to the Bank, with regard to the Montana Lawsuit or Washington Lawsuit.

53.     Additional coverage limitations, definitions, conditions, limitations, and exclusions may exclude or limit coverage for the Bank with regard to the Bank's alleged losses, the Montana Lawsuit and Washington Lawsuit. BancInsure continues to fully reserve any and all rights, remedies, and defenses at law, in equity, and under the Policy in relation to the Bank's alleged losses, the Montana

Lawsuit and the Washington Lawsuit.

WHEREFORE, BancInsure respectfully requests the following relief:

1.     For an Order declaring that BancInsure has no obligation, under the 2008-2009 Policy, 2009-2010 Policy, 2010-2011 Policy, or otherwise, to the Bank with regard to the Bank's alleged losses, the Montana Lawsuit, and the Washington Lawsuit;

2.     For an Order awarding BancInsure its costs and disbursements herein; and

3.     For such further relief as this Court deems just and proper.

Respectfully submitted,

MOULTON BELLINGHAM, P.C.

By _____
     Gerry Fagan, Esq.
     Suite 1900, Crowne Plaza
     27 North 27th Street
     P.O. Box 2559
     Billings, Montana 59103-2559
     (406) 248-7731

**ATTORNEYS FOR BANCINSURE, INC.**

P:\home\0932.160 - First Interstate Bank\Pleadings\Drafts\Complaint.doc